IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELICIA HELLER SHELDON,

        Plaintiff,

v.                                Civil Action No. 5:09CV51
                                                (STAMP)

SUE HART, KRANKENHAUS STENUM e. V.,
MALTE PETERSEN,[1] and JENS DANNENBERG,

        Defendants.

## MEMORANDUM OPINION AND ORDER
### GRANTING THE DEFENDANTS' MOTION TO DISMISS;
### DENYING THE PLAINTIFF'S MOTION TO FILE A SURREPLY;
### AND DENYING THE PLAINTIFF'S MOTION
### FOR LEAVE TO AMEND HER COMPLAINT

I.  Procedural History

The plaintiff, Elicia Heller Sheldon, filed a complaint in this Court against defendants Sue Hart ("Hart"), Krankenhaus Stenum e. V. ("Stenum"), Malte Petersen ("Petersen"), and Jens Dannenberg ("Dannenberg"), asserting several claims, including fraud, negligence per se, breach of contract, violation of the West Virginia Consumer Protection Act, gross negligence, battery, intentional infliction of emotional distress and negligent infliction of emotional distress.

On August 3, 2009, defendants Hart, Stenum, and Petersen filed a motion to dismiss, pursuant to a lack of personal jurisdiction, the doctrine of forum non conveniens, the forum selection clause in

_____

[1]Defendant Petersen's last name is spelled incorrectly in the caption of the complaint.

the Hospital Treatment Contract, and the plaintiff's failure to perfect service in accordance with the Hague Convention against defendants Stenum, Petersen and Dannenberg. The plaintiff filed a response to which the defendants replied. The plaintiff then filed a motion for leave to file a surreply to the defendants' motion to dismiss to which the defendants replied in opposition. The plaintiff did not file a reply.

On October 5, 2009, the plaintiff filed a motion for leave to amend her complaint. The defendants filed a response to which the plaintiff replied.

For the reasons set forth below, the defendants' motion to dismiss is granted; the plaintiff's motion for leave to file a surreply to the defendants' motion to dismiss is denied; and the plaintiff's motion for leave to amend her complaint is denied.

## II. <u>Facts</u>[2]

The plaintiff, a resident of West Virginia, suffered back pain resulting from a degenerative disc disease that was aggravated by osteoporosis post-menopause. The plaintiff contacted defendant Stenum, a hospital organized and operating under the laws of Germany, after reading about artificial disc replacement ("ADR") on Stenum's website. Defendant Hart, a Michigan resident, contacted the plaintiff to inform her she was a candidate for ADR. Thirteen

---

[2]For purposes of deciding this motion to dismiss, the facts are based upon the allegations contained in the complaint.

2

days later, the plaintiff contacted Hart via telephone to express her reservations about ADR. The plaintiff also spoke with defendant Petersen over the telephone regarding ADR. The plaintiff and Hart again spoke via telephone on October 12, 2007.

The plaintiff wired $54,000.00 to Stenum for the ADR surgery. On October 30, 2007, the plaintiff signed a hospital treatment contract in Germany. The contract contains a forum selection clause, which provides:

> The contracting parties hereby agree that the Patient's liability claims against the Hospital or any doctor, employee or other member of the nursing staff carrying out work of the Hospital are exclusively limited to claims which are valid under the laws of the Federal Republic of Germany. The contracting parties therefore expressly agree as follows:
> - The patient and the Hospital hereby expressly agree that in the event of any dispute arising with respect to claims based on treatment errors, including ones in connection with a contract for the benefit of a third party and relating to any third party employed by the Hospital in the treatment or care of the Patient concerned,
> - that such claims will be exclusively subject to the jurisdiction of and enforceable before German courts or the European Court of Justice,
> - that the Patient will refrain from making any claims against the Hospital or third parties involved here before American courts, in particular from making or attempting to enforce before American courts within the framework of so-called class action suits,
> - that the Patient will — to the extent legally permissible and purely as a precautionary measure on the part of the hospital — also refrain from making any more far-reaching claims for treatment errors under US law or attempting to enforce such claims on any legal basis whatsoever.
>
> The Patient's attention is drawn to the fact that by signing this agreement he/she expressly waives his/her rights as stated above and that by the legally binding

> signature of the Hospital/its legal representative this
> waiver is accepted.
> This provision does not apply to the Hospital's claims
> against the Patient to the payment of fees.

Defendant Dannenberg performed the surgery on November 2, 2007. In her complaint, the plaintiff alleges that Dr. Ritter-Lang was to perform the surgery and that Dannenberg performed the surgery without her consent. According to the plaintiff, the surgery was not a success. The plaintiff woke up from surgery finding her arms paralyzed. Another hospital in Germany performed emergency surgery on her back. The plaintiff states in her complaint that the doctors at that hospital determined that bone fragments chipped off the C6 vertebrae during the cervical ADR at Stenum and those bone fragments caused the plaintiff's paralysis. The plaintiff now states that because of the surgery, she has developed radiculopathy in all limbs, suffers from incontinence and uncontrollable muscle spasms, and endures constant and intense pain.

## III. Applicable Law

This Court reviews a motion to dismiss pursuant to a forum selection clause under Federal Rule of Civil Procedure ("Rule") 12(b)(3). Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). In reviewing a motion to dismiss under Rule 12(b)(3), this Court may "freely consider evidence outside the pleadings." Id.

IV.  Discussion

A.  Motion to Dismiss

1.  Forum Selection Clause

While it is well settled law that parties may agree to forum selection through private contracts, in this circuit it is unresolved whether a federal court sitting in diversity applies state or federal law when reviewing the validity of a forum selection clause.  Carmichael Equipment, Inc. v. Diamond Mowers, Inc., No. 3:09-0842, 2009 WL 3517671, at *2 (S.D. W. Va. Oct. 27, 2009).  This Court need not decide the issue as the analysis under both tests produces the same result.

West Virginia uses the Second Circuit test to examine the validity of forum selection clauses.  Syl. Pt. 6 Caperton v. A.T. Massey Coal Co., 679 S.E.2d 223 (W. Va. 2008), rev'd on other grounds, 129 S. Ct. 2252 (2009).  Thus, a reviewing court must make four inquiries:

> [t]he first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  The second step requires classification of the clause as mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or are simply permitted to do so.  The third query asks whether the claims and parties involved in the suit are subject to the forum-selection clause.  If the forum-selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable and unjust, or

that the clause was invalid for such reasons as fraud or overreaching.

Id.

Parties to an agreement who sign a contract "cannot claim ignorance of the plainly worded forum-selection clause, which 'clearly convey[ed] to any reader that any action regarding the [contract] must be brought in a specific court, and the location of that court [was] readily ascertainable . . . .'" Id. at 236 (quoting Klotz v. Xerox Corp., 519 F. Supp. 2d 430, 433 (S.D.N.Y. 2007)). In this case, the first prong is easily resolved as the plaintiff was a party to the agreement who signed the contract. The plaintiff contends that the clause was not reasonably communicated to her because Stenum's representative allegedly "shoved this document under Ms. Sheldon's nose." Here, Stenum did not attempt to hide the forum selection clause. It is in regular size font under the heading "Liability/limitation of liability." The plaintiff cannot claim ignorance of this plainly worded forum selection clause of the contract. Therefore, this Court finds that defendant Stenum reasonably communicated the clause to the plaintiff.

Forum selection clauses are either mandatory or permissive. A mandatory clause provides that jurisdiction is appropriate only in a designated forum while a permissive clause merely authorizes litigation in a designated forum. Id. at 237. To resolve this question, a reviewing court must scrutinize the particular language

6

used.  Id.  "[A] forum selection clause must do more than simply mention or list a jurisdiction" to be enforced as mandatory; "in addition, it must either specify venue in mandatory language, or contain other language demonstrating the parties' intent to make jurisdiction exclusive."  Id. at 237–38.  West Virginia courts enforce a forum selection clause as mandatory "[i]f jurisdiction is specified with mandatory terms such as 'shall,' or exclusive terms such as 'sole,' 'only,' or 'exclusive' . . ."  Id. at 239.

Here, the forum selection clause expressly provides that claims based on treatment errors will be "exclusively subject to jurisdiction of and enforceable before German courts or the European Court of Justice."  Further, the clause states that the plaintiff will "refrain from making any claims against the Hospital or third parties involved here before American courts . . ." (emphasis added).  The parties used mandatory language that identified the jurisdiction where disputes would be tried. Accordingly, this Court finds that the forum selection clause is mandatory.

The third prong of the test contains two parts: whether the claims and parties involved are governed by the clause.  "[T]o determine whether certain claims fall within the scope of a mandatory forum-selection clause, the deciding court must base its determination on the language of the clause and the nature of the claims that are allegedly subject to the clause."  Id. at 240.

West Virginia courts examine the language of the forum selection clause in accordance with the substantive laws of the forum whose laws apply.  Id.  Because the forum selection clause does not contain a choice of law provision, this Court will conduct a choice of law analysis under West Virginia law.  The plaintiff signed the contract in Germany and performance of the contract occurred in Germany.  Therefore, German law applies when interpreting the contract.  See Syl. Pt. 1 Michigan Nat. Bank v. Mattingly, 212 S.E.2d 754 (W. Va. 1975) ("The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State.").

In Germany, there is no parol evidence rule.  Leslie Gordon Fagen & Daniel Thacker, Choice of Law and Interpreting Contracts in International Commercial Arbitration, 21-8 Mealey's Int'l Arb. Rep. 12 (2006).  However, "a written agreement is presumed to be accurate and complete."  Id.  Therefore, while there is a presumption that the written contract is accurate and complete, this Court may look to other evidence that might assist it in interpreting the contract.  Id.

Here, the written agreement provides that "any dispute arising . . . with respect to claims based on treatment errors" are to be exclusively subject to the jurisdiction of German courts or the European Court of Justice.  Further, the agreement states that the plaintiff "will refrain from making any claims against the Hospital

or third parties involved here before American courts." (emphasis added).  First, all of the claims brought do arise from the alleged treatment errors.  None of the claims asserted in the complaint would have existed in the absence of the defendants' alleged treatment errors.  Second, even if this Court agreed with the plaintiff that not all the claims arose out of the alleged treatment error, she could still not litigate these additional claims in this Court as the forum selection clause expressly states that the plaintiff will refrain from making any claims against the defendants in American courts.  The plaintiff has provided no evidence that the alleged prior oral agreement she entered into with Stenum contained a contradictory forum selection clause or specified that there would not be a forum selection clause in any written agreement.  Therefore, examining the plain and unambiguous language of the written agreement, this Court finds that all of the plaintiff's claims are within the scope of the forum selection clause.

In addition, the plaintiff alleges in her complaint that each individual defendant is an agent and or employee of Stenum.  The forum selection clause provides that the plaintiff will not make claims against the Hospital or third parties involved here before American courts and that the plaintiff's liability claims against the Hospital, any doctor, or any employee carrying out work for the hospital are exclusively limited to claims which are valid under

the laws of Germany.  Therefore, all the parties involved in the suit are subject to the forum selection clause.

Under West Virginia law, the forum selection clause is presumptively valid as this Court has found that the defendants reasonably communicated the clause, that the clause has mandatory force, and that the clause covers the claims and parties involved in this dispute.  The final step is to ascertain whether the plaintiff has "rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Caperton, 679 S.E.2d at 247.

The last step of the West Virginia test overlaps with the federal standard.  Under the federal standard, courts afford forum selection clauses presumptive validity.  Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996).  However, this presumption is not absolute.  Id.  A mandatory forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  Forum selection clauses are unreasonable under both the West Virginia standard and the federal standard if:

> (1) their formation was induced by fraud or overreaching;
> (2) the complaining party "will for all practical
> purposes be deprived of his day in court" because of the
> grave inconvenience or unfairness of the selected forum;
> (3) the fundamental unfairness of the chosen law may
> deprive the plaintiff of a remedy; or (4) their

enforcement would contravene a strong public policy of
        the forum state.

See Allen, 94 F.3d at 928 (articulating the federal standard as
discussed in The Bremen, 407 U.S. at 12-13, and Carnival Cruise
Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).  The party
opposing the application of the forum selection clause bears a
heavy burden of proving unreasonableness.

    In a rebuttal argument, the party arguing that the clause
should not be enforced for fraud or overreaching must specifically
allege that the fraud relates to the forum selection clause, not to
the contract as a whole.  See Scherk v. Alberto-Culver Co., 417
U.S. 506, 519 n.14 (1974) ("[A]n arbitration or forum selection
clause in a contract is not enforceable if the inclusion of that
clause in the contract was the product of fraud or coercion.").
Thus, in order to make a successful challenge to a forum selection
clause, "the claims of fraud or overreaching must be aimed straight
at the [forum selection] clause." Haynsworth v. The Corporation,
121 F.3d 956, 963 (5th Cir. 1997).  By requiring this specific
allegation of fraud to the clause itself to succeed in invalidating
a forum selection clause, "courts may ensure that more general
claims of fraud will be litigated in the chosen forum, in
accordance with the contractual expectations of the parties."
Lipcon v. Underwriters at Lloyd's London, 148 F.3d 1285, 1296 (11th
Cir. 1998) (emphasis in original).

Here, the plaintiff claims that she signed the contract while being prepped by the anesthesiologist. This is not an allegation going to the forum selection clause itself, but instead to the contract as a whole. While this allegation, if proved might be "relevant to the merits of the claims in the absence of a forum selection clause, [it] is wholly inapposite to [this Court's] enforceability determination, which must of course precede any analysis of the merits." Haynsworth, 121 F.3d at 964.

A plaintiff does not have to physically appear in a courtroom to have her day in court. Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995). "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that [the complaining party] received under the contract consideration for these things." Davis Media Group, Inc. v. Best Western Int'l, Inc., 302 F. Supp. 2d 464, 469 (D. Md. 2004) (citing Central Contracting Co. v. Md. Cas. Co., 367 F.2d 341, 344 (3d Cir. 1966)).

Here, in her response to the motion to dismiss, the plaintiff states that she will be deprived of her day in court because she exhausted her savings on this surgery. The plaintiff cites The Bremen, 407 U.S. at 18, for the proposition that inconvenience to the plaintiff constitutes a ground for voiding the clause if enforcement would effectively deprive the plaintiff of her day in court. The plaintiff misinterprets The Bremen. In Carnival Cruise

Lines, 499 U.S. 585, 594, the court of appeals had found that the plaintiffs were physically and financially incapable of pursuing the litigation in the contracted forum.  Id.  The Supreme Court stated that the court of appeals did not place The Bremen's "serious inconvenience" statement in context.  Id.  The court explained that the statement was made in regard to a hypothetical agreement between two Americans who contracted to resolve their local dispute in a remote alien forum.  Id.  In this case, Germany is not a "remote alien forum," nor is this dispute an essentially local one more suited to resolution in West Virginia than Germany given the fact that the plaintiff's injury occurred in Germany and Stenum's principal place of business is Germany.  Id.  There is no indication that the defendants chose Germany as the forum for litigation as a means of discouraging its patients from pursuing legitimate claims.  As the Supreme Court has stated, such a bad-faith motive can be belied.  Id. at 595.  Here, the hospital's principal place of business is Germany and while Americans are operated on in the hospital, the surgeries occur in Germany.  The costs and difficulties the plaintiff faces in bringing an action in Germany, "being but the obvious concomitants of litigation abroad, do not satisfy The Bremen [inconvenience] standard."  Hodes v. S.N.C. Achille Lauro ed Altri-Gestione Montonoave Achille Lauro in Amministrazione Straordinaria, 858 F.2d 905, 916 (3d Cir. 1988) (citing The Bremen, 407 U.S. at 18).

13

The third prong of the federal standard, deprivation of a remedy, requires a showing of more than a less favorable outcome in the foreign court. Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir. 1992). "The fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair." Id. (citing Carnival Cruise Lines, 499 U.S. at 595).

Under the German Civil Code, the plaintiff can seek damages against the defendants under a breach of contract theory or a tort theory of liability. See Bürgerliches Gesetzbuch [BGB] [Civil Code] Aug. 18, 1896, Bundesgesetzblatt, as amended, § 280 (providing damages for breach of duty under contract); Id. at § 823 (discussing liability in damages for torts); Id. at § 831 (providing tort liability for vicarious agents). The plaintiff contends that the remedies under German law are inadequate. She first states that German civil courts award very limited damages compared to United States courts. She engages in a discussion about the social security system and socialized health care in Germany and argues that damages "are more symbolic as opposed to actually serving justice." Second, the plaintiff argues that German courts are inadequate because the system does not provide for punitive damages. Third, she contends that Germany is

inadequate because the rules governing legal fees provide for contingent legal fee arrangements in only "very limited cases." Fourth, and finally, she argues that "it is very questionable that she will receive the same attention and understanding from a professional judge as she would from a jury of her peers from her place of residence that understands her language, culture, economic circumstances, and the emotional distress she suffers as a consequence of the Defendant's acts."

This Court finds that the plaintiff has not made a sufficient showing that she will be deprived of a remedy in a German court. First, as discussed above, the German Civil Code contains provisions for recovering under either a tort or contract theory in this case. The fact that the plaintiff's recovery may not be as favorable in a German court does not meet the unreasonableness standard for not enforcing a forum selection clause. <u>Riley</u>, 969 F.2d at 958. This Court has also already discussed that higher litigation costs do not meet the unreasonableness standard. Finally, this Court has been shown nothing to suggest that a German court would not be fair in this case.

The final prong of the unreasonable test is whether the forum selection clause contravenes the forum state's public policy. In West Virginia, forum selection clauses "are not contrary to public policy." <u>Caperton</u>, 679 S.E.2d at 235. The plaintiff contends that West Virginia's interest in the case is tantamount to any other

jurisdiction because of the "severe and permanent injuries caused to a West Virginia resident." The plaintiff does not mention in this discussion that three of the named defendants are German and the hospital where the surgery was performed is located in Germany. Even if this Court accepted the plaintiff's contention that West Virginia's interest is greater than Germany's in the outcome of the litigation, that is not what this Court looks to in deciding the public policy prong of the unreasonableness test. This Court looks to whether the clause is fair and reasonable. Id. If it is not fair and reasonable, only then does the public policy prong make a forum selection clause unenforceable. Id. Because this Court has found the forum selection clause fair and reasonable, and because forum selection clauses are not in and of themselves contrary to the public policy of West Virginia, the parties' forum selection clause contained in the contract should be given effect.

While this Court has found that the forum selection clause is valid and enforceable under either the West Virginia standard or the federal standard, it will address the contention made by the plaintiff that the defendants applied inapplicable law rather than Fourth Circuit precedent. The plaintiff relies on Stewart Organization, Inc., v. Ricoh Corp., 487 U.S. 22, 31 (1988), for the proposition that forum selection clauses should not receive dispositive consideration. She also cites Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1257–58 (4th Cir. 1991), which

applies <u>Stewart</u>.  The plaintiff's reliance on these cases for the
contention that forum selection clause should not receive
dispositive consideration is misplaced.  The plaintiff did not cite
the entire relevant sentence from <u>Stewart</u> in her brief.  The
<u>Stewart</u> court stated that a forum selection clause "should receive
neither dispositive consideration . . . nor no consideration . . .
but rather the consideration for which Congress provided in [28
U.S.C.] § 1404(a)."  <u>Stewart</u>,487 U.S. at 31.  Unlike <u>Stewart</u>,
however, "the federal statutory provisions governing transfer of
venue from one United States District Court to another . . . do not
apply in cases that involve a forum-selection clause that requires
litigation in another <u>country</u>."  <u>Lipcon</u>, 148 F.3d at 1290 n.3
(emphasis in original).

   2.  <u>Arguments Regarding Contract Formation, Forum Non
Conveniens and Service of Process</u>

   The plaintiff argues that the contract is not enforceable
because the alleged prior oral agreement trumps the written
contract, the written agreement does not contain a price term, and
the plaintiff signed the contract under duress.  Because this Court
finds that the forum selection clause is enforceable, it will not
rule on the merits of the plaintiff's contract claims.  <u>See</u>
<u>Haynsworth</u>, 121 F.3d at 956 (stating that a court's enforceability
decision must proceed any analysis of the merits).  Further, this
Court will not reach the merits of the defendants' arguments

regarding forum non conveniens and service of process. The plaintiff's arguments regarding the merits of the contract and the defendants' arguments regarding forum non conveniens and service of process should be addressed in Germany, the more appropriate forum whose laws apply and the forum that the parties selected by contract.

   3.   <u>Personal Jurisdiction</u>

   The defendants believe that this Court cannot exercise personal jurisdiction over them. "[A] district court has the discretion to dismiss on the basis of improper venue before reaching the issue of personal jurisdiction." <u>Sucampo</u>, 471 F.3d at 550 n.3. Because this Court dismisses the plaintiff's complaint on the basis of the forum selection clause, it will not address the defendants' personal jurisdiction objections.

B.   <u>Motion to File Surreply</u>

   The local rules of this Court state that a party should not file a surreply without first obtaining the permission of the court. L.R. Civ. P. 7.02(b)(4); <u>Thomas v. Branch Banking & Trust Co.</u>, 443 F. Supp. 2d 806, 809 n.2 (N.D. W. Va. 2006). Generally, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, <u>Federal Civil Procedure Before Trial</u> 12:110 (The Rutter Group 2008). <u>See also Khoury v. Meserve</u>, 268 F. Supp. 2d 600, 605 (D. Md. 2003)

("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is superfluous and unnecessary. See e.g. E.E.O.C. v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence in making its decision); First Penn-Pacific Life Ins. Co. v. Evans, 162 F. Supp. 2d 423, 430 (D. Md. 2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the additional contentions advanced"). In those circumstances, a motion for leave to file a surreply should be denied.

This Court holds that a surreply is not warranted in this case. The plaintiff alleges in her motion for leave to file a surreply that: (1) the defendants incorrectly assert that controlling Fourth Circuit case law is inapplicable; (2) the defendants incorrectly rely upon non-controlling case law; and (3) the defendants make incorrect conclusory statements.

As discussed earlier in the opinion, the law of forum selection clauses is well developed in this Circuit and in the State of West Virginia. A surreply is not necessary here as the Fourth Circuit precedent the plaintiff cites is inapplicable in this case. Additionally, this Court did not rely upon any alleged

conclusory statements by the defendants in making its ruling on the defendants' motion to dismiss. Accordingly, the plaintiff's motion for leave to file a surreply is denied.

C.   Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny a motion to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001).

Here, the plaintiff seeks leave to amend her complaint to supplement her complaint with a count for medical malpractice, supplement her original pleading with factual assertions addressing claims raised by the defendants in their motion to dismiss, and alter her claims against the defendants as defendant Dannenberg is deceased.

After a review of the record, this Court concludes that the plaintiff's motion must be denied. First, the plaintiff did not attach a copy of the amended complaint for the defendants' review

until after the defendants responded to the motion.  Second, the plaintiff's motion for leave to amend is futile.  Even if this Court granted the plaintiff's motion, defendant Dannenberg's death does not change the language of the contract.  <u>See</u> <u>Galindo v. ARI Mut. Ins. Co.</u>, 203 F.3d 771, 777 n.10 (11th Cir. 2000) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (quoting <u>Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.</u>, 175 F.3d 848, 859 (10th Cir. 1999)).  Accordingly, the plaintiff's motion for leave to file an amended complaint is denied.

## V. <u>Conclusion</u>

For the reasons stated above, the defendants' motion to dismiss is GRANTED; the plaintiff's motion to file a surreply is DENIED; and the plaintiff's motion for leave to amend her complaint is DENIED.  Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     January 8, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE